## MERIWEATHER–GRAHAM–OLIVER CO. v. BANK OF COMMERCE OF EARLE, ARK.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1925.)

No. 4103.

**1. Equity ⬡15—Tennessee state practice permits recovery of strictly legal demand by bill in equity.**

Tennessee state practice permits recovery of strictly legal demand by bill in equity.

**2. Appeal and error ⬡184—Circuit Court of Appeals held not bound of its own motion to consider question whether trial court had equity jurisdiction.**

Where bill in equity alleged common-law suit in trover, but defendant's answer alleged facts entitling it to equitable cognizance, Circuit Court of Appeals was not bound of its own motion to consider question of trial court's jurisdiction to try case in equity.

**3. Partnership ⬡217(3)—Evidence held insufficient to show deed of trust was partnership indebtedness.**

Evidence *held* insufficient to show that deed of trust, securing advances for operating farm owned individually, was indebtedness against farm operated by mortgagor and another as partners.

Appeal from the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Suit by the Meriweather-Graham-Oliver Company against the Bank of Commerce of Earle, Ark. Decree for defendant (290 F. 439), and plaintiff appeals. Affirmed.

W. H. Harrelson, of Memphis, Tenn. (Banks & Harrelson, of Memphis, Tenn., on the brief), for appellant.

Harry Spears, of Memphis, Tenn. (A. B. Shafer, of Memphis, Tenn., and J. R. Pugh, of Earle, Ark., on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Prior to March, 1920, Dean was the legal owner of a plantation in Arkansas. He and House were engaged in its operation. It is in dispute whether, in this matter, Dean and House constituted a partnership, which was practically the lessee of the plantation, or whether there was only an executory contract, by which, after the profits had paid certain debts, House should receive an interest in the property. In any event, House was the active manager at the plantation, and the operations there were under the name "Dean and House." Dean also

3 F.(2d)—33

had a plantation in Mississippi, and he was concurrently becoming and expected to become indebted on account of one or the other plantation to the Meriweather-Graham-Oliver Company, cotton brokers, a corporation at Memphis, which is hereafter called the "plaintiff," and which was expecting to make maintenance advances to each plantation in the customary way. On March 20 Dean gave to this broker a trust deed covering the Arkansas plantation and the personal property upon it, and the "entire crops of cotton * * * which first party may raise, or cause to be raised, or grown during the year 1920," on the plantation. This trust deed, according to the plaintiff's theory, was to secure the operating advances to be made to this plantation. After the end of the season, House took certain cotton grown that year and delivered it to a nearby bank, the Bank of Commerce of Earle, Ark., to apply upon its debt against Dean and House, incurred during the season. Plaintiff brought this action in the court below against the Bank of Earle, to recover the value of this cotton, on account of its alleged prior right thereto under the trust deed of March 20. On final hearing the bill was dismissed.

The questions presented by the appeal are: (1) Did the trial court fail to get jurisdiction, as a court of equity, and because there was adequate remedy at law? (2) Were Dean and House a partnership, with such rights that the mortgage by Dean alone would be invalid? (3) To what extent does such a mortgage take effect upon a crop not sown at its date? (4) Did plaintiff establish a debt against the Arkansas plantation?

[1, 2] We find it necessary to consider only questions 1 and 4. The Tennessee state practice permits the recovery of a strictly legal demand by a bill in equity. This cause was begun as in equity. It was nothing but a common-law suit in trover, and the bill should have been reformed, or at once transferred to the law side. It proceeded to the final decree without any question as to its form, and came to this court by appeal. If this were all, and if we were under the old practice, we would necessarily remand the case for reformation; and, if we undertook to apply sections 274a and 274b of the Judicial Code (Comp. St. §§ 1251a, 1251b), there would be troublesome questions as to the lack of any waiver of a jury trial and as to the status of the reviewing court; but we think these may be passed by. By amended answer the de-

fendant bank alleged that plaintiff's advances were secured by liens upon both the Mississippi and the Arkansas plantations, while defendant's interests as a secured creditor were with regard to the latter only, and that therefore defendant was entitled to a marshaling of liens, whereby the plaintiff must first exhaust its security against the Mississippi plantation. This was a matter of equitable cognizance, which, if first stated, would have given a court of equity jurisdiction of all the questions involved; and we have no doubt that this appeal to rightful powers of equity, though belated in the case, operated to give at least such color of equity jurisdiction to the whole case that this court is not now bound, of its own motion, to consider the question of equity jurisdiction as it originally arose.

[3] We assume, for the purposes of this review, but without intimating any ruling thereon, that plaintiff may be right upon questions 2 and 3. We conclude that it has failed to show any indebtedness against the Arkansas enterprise. The record shows a rather complete account rendered by the plaintiff to the defendant September 1, 1920, indicating a total balance due of $15,-762. Plaintiff also supports its claim by producing a package of original drafts for advances drawn upon it by Dean or House, or Dean and House, and cashed by it. Every such draft, which has any indication of being on account of the Arkansas plantation or Dean and House, is included in this balance. From this total there should quite clearly be deducted a $3,000 draft which, though drawn by "Dean and House, by L. G. Dean," was drawn from Mississippi, and is in no way connected with the Arkansas transaction. There should apparently be deducted a $5,000 draft signed by "Dean and House, by L. G. Dean," which, though payable to and deposited in the Dean and House account in the defendant bank, does not sufficiently appear to have been for the benefit of the partnership, if partnership there was. The draft bears the pencil notation that it was a land account, and the deposit was drawn out of the bank the next day as part of a larger sum. It is not apparent how it could have been an advance on account of the operation of this plantation. This account of September 20 was the last one rendered by the plaintiff, and House testifies without dispute that, including both the Arkansas Dean and House cotton, then on hand with plaintiff, and that thereafter shipped to it, it received 168 bales for which it never accounted. At the

average price per bale which plaintiff claims against defendant for some of the same cotton crop, this amount not accounted for would be about $15,000. We find nothing in the record to dispute this counterclaim. It follows that plaintiff, on its own theory of the law, has no case in fact. The decree is affirmed.